UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THELMA BELTON,

        Plaintiff,

v.                                                             Case No: 6:17-cv-989-Orl-40TBS

U.S. DEPARTMENT OF
AGRICULTURE,

        Defendant.
_____/

## ORDER

This cause comes before the Court without oral argument on Defendant's Motion for Summary Judgment. (Doc. 29). Plaintiff responded in opposition (Doc. 32), and Defendant submitted a Reply (Doc. 37). With briefing complete, the matter is ripe. Upon consideration, Defendant is entitled to summary judgment on Plaintiff's claims.

**I.    BACKGROUND**

In this consolidated[1] case, Plaintiff Thelma Belton brings employment discrimination claims pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* against Defendant U.S. Department of Agriculture ("**USDA**"). (June Comp., Doc. 1; Nov. Comp., Doc. 1).

---

[1] Plaintiff initiated this action with the filing of a complaint in this Court on June 1, 2017. (Doc. 1 ("**June Comp.**")). The June Complaint alleges two Counts: disparate treatment (Count I) and retaliation (Count II). (*Id.*). In November 2017, Plaintiff filed another suit in this Court alleging that she suffered discriminatory treatment by Defendant. (*Belton v. U.S.D.A.*, No. 6:17-cv-1906-Orl-40TBS, Doc. 1 ("**Nov. Comp.**")). The November Complaint alleges one Count of hostile work environment discrimination. (*Id.*).

Plaintiff maintains that she is a member of a protected class because she is Native American and Hispanic. (Doc. 33, ¶ 10).[2]

In February 2013, Plaintiff began working for Defendant as a "term" Plant Protection and Quarantine ("**PPQ**") Technician with the USDA division of Animal and Plant Health Inspection Service ("**APHIS**"). (*Id.* ¶ 7). Plaintiff's appointment was renewed for the maximum four-year duration. (*Id.*). She began work at Defendant's duty station in Mt. Dora, Florida, and was transferred to the Orlando office in April 2014. (*Id.* ¶ 8). Plaintiff's supervisor was Phillip Russell, who had supervisory responsibilities over both the Mt. Dora and Orlando offices. (Doc. 32-2, p. 2; Doc. 33, ¶ 9). Mary Beth Tagliarino was a supervisor in the Mt. Dora office. (Doc. 32-2, p. 2). Plaintiff alleges that both Mr. Russell and Ms. Tagliarino subjected her to discrimination. (*Id.*).

After filing an informal EEO complaint in 2013, Plaintiff filed a formal EEO complaint alleging hostile work environment based on race or color in April 2014, which she amended in May 2014. Plaintiff alleged:

- On January 31, 2014, she was instructed to forward all of her work and electronic mail for monitoring and review by her supervisor and a coworker;
- On December 4, 2013, and February 7, 2014, her request to attend a Basic Leadership Development Program was denied; and
- On several dates, she was subjected to various acts of harassment, including but not limited to:
    - On March 28, 2013, April 23, 2013, and May 1, 2013, her supervisor pointed out to her that her coworkers were treating her differently;
    - In March 2013, her supervisor yelled at her, threw her assignment results at her, ordered that she stay late until she completed an assignment, then denied such conduct when it was reported to management;

---

[2] In an unsigned statement Plaintiff gave to investigators—titled Complainant Affidavit— she states she is half American Indian and half Hispanic, but "[m]ost people would call [her] black." (Doc. 32-2, p. 2).

- On April 11, 2013, she learned that her supervisor questioned her former colleagues about her at a school career fair;
- On April 12, 2013, her supervisor asked her whether she believed her coworker was racist due to his statements in the office;
- On April 15, 2013, her supervisor assigned Safety Officer duties to a coworker, even though she volunteered to perform such tasks;
- On April 23, 2013, her coworkers made negative comments about black people in front of her and her supervisor;
- In April 2013, she was accused of having inappropriate conversations with a customer and stealing office supplies;
- In May 2013, she was accused of using her Bluetooth with her Government cell phone when she experienced connectivity issues and told that her coworker would have to clean up her mess;
- On May 30, 2013, and in June 2013, her supervisor threatened her job, scrutinized her work, accused her of always missing things, and expressed an intent to get [her] fired;
- In June 2013, her coworkers complained to her about laws protecting minorities and the special treatment that minorities receive due to such classification;
- In July 2013, her supervisor warned her against reporting office incidents and complaining about harassment to management, accused her of not following the chain-of-command, and intimated that her rehire was in jeopardy;
- On August 5, 2013, in front of the entire staff, her supervisor said to her, "You, get out of my face, you disgust me," and ordered her to get out of the supervisor's office;
- On August 20, 2013, her supervisor stated that she did not do anything correctly and threatened that if she continued to complain to management about the office environment, she would not be rehired;
- On August 26, 2013, and January 3 and 17, 2014, she was accused of not completing her work and lying about doing so;
- On September 10, 2013, she was accused of initiating a rumor that her supervisor and coworker were having an affair, which led to her coworker yelling and cursing at her in the office;
- In December 2013, despite her request, her truck was not repaired until a coworker corroborated her concerns;
- On January 22, 2014, her supervisor spoke to her in a condescending manner, then sarcastically referred to her EEO Counselor as her friend and told her, "I cannot protect you, all I can do is tell the truth, I mean I do not think I have done anything wrong;"

- o On January 23, 2014, after she expressed interest in a job at another office, her coworkers stated to her that EEO complaints were the means by which unqualified individuals obtained positions and that they were tired of Black people using the EEOC for advancement;

- o On February 6, 2014, she discovered that items related to her work vehicle, including its keys, were missing from her desk; and

- o On April 12, 2014, she was subjected to slander and false allegations.

(Doc. 29-3; Doc. 33, ¶ 2).[3, 4] A subset of these incidents form the basis for the November Complaint, which alleges one Count of hostile work environment discrimination. (Nov. Comp., ¶¶ 22–28).

The November Complaint avers four grounds to support her hostile work environment claim. (*Id.* ¶¶ 6–17). First, Plaintiff asserts her request to attend a leadership program was denied discriminatorily. (*Id.* ¶ 14; Doc. 29-11).[5] Second, Plaintiff maintains that "some of her peers" regularly made disparaging comments about minority groups and government programs benefiting minority employees. (Nov. Comp. ¶ 11, 13; Doc. 32, pp. 3–4). Third, Plaintiff avers that Ms. Tagliarino threw documents at her, yelled at her in front of staff, and told her "you disgust me." (Doc. 32, pp. 3–4; Doc. 32-2, pp. 10, 20–22).

---

[3] These allegations are repeated, and some additional details are provided, in the Complainant Affidavit. (Doc. 32-2).

[4] USDA determined that Plaintiff was not subjected to a hostile work environment, and the Office of Federal Operations affirmed that decision. (Doc. 33, ¶ 3).

[5] Though Plaintiff claims she was denied admission for discriminatory reasons, the record shows that Plaintiff never completed the necessary paperwork. (Doc. 29-11). In the Complainant Affidavit, Plaintiff says she emailed her supervisor asking to take the course and was told she could. (Doc. 32-2, p. 6). Time passed and she didn't hear additional details about the course. (*Id.* ("I think [Russell] didn't think about that.")). When she heard other employees were enrolled in the class, she again inquired with Russell, who offered her the opportunity to take the class. (*Id.*). She then declined the offer, purportedly because she was under investigation for stealing a test and couldn't do both. (*Id.*). Plaintiff's suggestion that she was discriminatorily excluded from the course is simply unsupported by any evidence.

Finally, Plaintiff maintains that she was falsely accused of stealing office supplies. (Doc. 32, p. 4; Doc. 32-2, pp. 26, 30).

The June Complaint (alleging failure-to-promote and retaliation claims) is predicated on separate facts. In 2015, APHIS announced two vacancies (respectively, the "**319 Position**" and "**361 Position**") as part of a "Contract-to-Permanent [employment] Program." (June Comp. ¶ 13; Doc. 33, ¶ 12). The 319 and 361 Positions were Plant Protection Technician positions. (Doc. 29-16, ¶ 3). Plaintiff applied to both positions. (June Comp. ¶ 13; Doc. 33, ¶ 12). Applicants completed an online questionnaire that was scored in three categories: best qualified (score of 95–100), well qualified (85–94.99), and qualified (84.99 and below). (June Comp. ¶ 15; Doc. 33, ¶ 13). The graded questionnaires were reviewed by Rebecca Meyer, Supervisory Human Resources Specialist, who compiled a "best qualified list" composed of all applicants who scored above 95. (Doc. 29-15, ¶¶ 7–8). Ms. Meyer then sent the best qualified lists to Frances Jowyk, the selecting official for both vacancies. (*Id.* ¶ 8).

Plaintiff applied to both positions but was hired for neither. Plaintiff's questionnaire scores were 87.7 for the 319 Position and 97.1 for the 361 Position. (*Id.* ¶ 12). Her application therefore only made the best qualified list for the 361 Position. (*Id.* ¶ 14). To inform the selection process, Ms. Jowyk used a "matrix to objectively evaluate each candidate's qualifications in light of the criteria listed in the vacancy announcements." (Doc. 29-16, ¶ 7). The matrix was developed by Defendant in 2015 and has been frequently used since its creation. (*Id.*). The matrix derives a score from three factors, weighted as follows: (i) 50% specialized experience criteria; (ii) 30% reference checks;

5

and (iii) 20% performance rating. (*Id.* ¶ 8). Mr. Russell compiled data for the matrix scores, and the pertinent scores were:

- Liane Pizzo         2.842424
- Nube McDermott      2.812424
- John Zale           2.704545
- Rebekah Keyes       2.686061
- Sara Mortzfeldt     2.376364
- Thelma Belton       2.2

(*Id.* ¶¶ 9–10). Neither Mr. Russell nor Ms. Jowyk interviewed candidates. (Doc. 29-16, ¶ 16; Doc. 29-17, ¶ 13). Most of the disparity in matrix scores between Plaintiff and the selected candidates—Liane Pizzo and Nube McDermott—is explained by Ms. Pizzo's and Ms. McDermott's superior specialized experience scores. (Doc. 29-16, p. 8). Plaintiff "lacked [r]egulatory and PDA/MIST experience and expertise as compared to other candidates, had lower proficiency test scores as compared to other candidates, and had lower performance ratings as compared to other candidates." (Doc. 29-17, ¶ 12). Critically, Ms. Pizzo and Ms. McDermott had at least seven years more experience in their PPQ Technician roles than Plaintiff. (Doc. 29-15, pp. 42–47; Doc. 29-17, pp. 35–38, 55–57).

Liane Pizzo, a white female with no prior EEO activity, was selected for one of the vacancies, and Nube McDermott, a Hispanic female with no prior EEO activity was selected for the other. (June Comp. ¶ 16; Doc. 33, ¶¶ 14–15). Frances Jowyk, a white female, selected the applicant to fill both vacancies with Phillip Russell's assistance. (June Comp. ¶ 14). The June Complaint alleges that Plaintiff's non-selection constituted

disparate treatment based upon race and gender, (*Id.* ¶¶ 20–25); it also avers a retaliation claim based on Plaintiff's non-selection, asserting that Phillip Russell "did not rate . . . Plaintiff as high as he rated other individuals who have not participated in protected activity." (June Comp. ¶¶ 26–31).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove up an essential element of their claim. *Celotex*, 477 U.S.

at 322–23. Also, "[t]he court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam).[6]

## III. DISCUSSION

The Court's analysis must begin with an evidentiary issue. Throughout its response in opposition of Defendant's Motion for Summary Judgment, Plaintiff cites the Complainant Affidavit, an unsigned, undated statement that Plaintiff gave to investigators regarding her alleged abuse. (*See, e.g.*, Docs. 32, 32-2). This document is not entitled to consideration in defense of summary judgment. To be considered at this stage, an affidavit must, among other things, "be signed by the affiant" and notarized. *Bryant v. Orlando Sentinel Comms.*, No. 6:05-cv-1710-Orl-19UAM, 2007 WL 1796258, at *5 (M.D. Fla. June 20, 2007) (striking unsigned, un-notarized affidavit at summary judgment stage). Federal law also authorizes consideration of unsworn declarations made under penalty of perjury in accordance with 28 U.S.C. § 1746. Here, the Complainant Affidavit is not entitled to consideration because it is neither signed, notarized, nor made under penalty of perjury pursuant to § 1746.

### A. Hostile Environment Claim

Defendant contends that Plaintiff has not produced sufficient evidence of workplace abuse to sustain her hostile work environment claim. (Doc. 29, pp. 13–19).

---

[6] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin." 24 U.S.C. 2000e-2(a)(1). A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a hostile work environment claim, Plaintiff must show:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kentworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The requirement that harassment be sufficiently severe or pervasive contains both an objective and a subjective component. *Miller*, 277 F.3d at 1276. The harassing conduct must result in both (1) an environment "that a reasonable person would find hostile or abusive, and (2) an environment that the victim subjectively perceive[s] . . . to be abusive." *Id.* (quoting *Harris*, 510 U.S. at 21–22). The objective element is "not subject to mathematical precision," but rather courts can infer an environment is "hostile" or "abusive" from the circumstantial facts. *Edmond v. Univ. of Miami*, 441 F. App'x 721, 725 (11th Cir. 2011) (per curiam). This requires consideration of "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work

performance." *Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009) (quoting *Harris*, 510 U.S. at 21–22).

To make out a hostile work environment claim, Plaintiff must show harassing conduct based on her race or national origin. *Whitehurst v. Liquid Envtl. Sols.*, Inc., 45 F. Supp. 3d 1328, 1343 (M.D. Fla. 2014) ("The touchstone of a hostile work environment claim is the presence of severe or pervasive harassment based on a protected characteristic."). "[N]ot all objectionable conduct or language amounts to discrimination under Title VII, . . . only conduct that is based on a protected category... may be considered in a hostile work environment analysis." *Trask v. Sec'y, Dep't of Veteran Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016) (holding that "voluminous incidents of pharmacy management's alleged hostility [and] comments . . . were never related to the plaintiffs' protected characteristics").

In assessing Plaintiff's evidence in support of her hostile environment claim, the Court does not consider the Complainant Affidavit for the reasons expressed above. The only other evidence Plaintiff cites in support of this claim is a coworker's signed affidavit (Doc. 32-18), an email where Mr. Russell asks Plaintiff if he can help resolve a conflict, to which Plaintiff responds that the issue has been resolved (Doc. 32-7), and an email from Plaintiff relaying to Mr. Russell a litany of coworker complaints unrelated to race (Doc. 32-8). In this last email, Plaintiff notes: "I hate to add to your stresses and worry you with *petty office issues*." (*Id.*). In addition to these materials, the Court considers the documents cited by Defendant, including an email exchange describing Plaintiff's failure to complete the paperwork necessary to qualify for the leadership program (Doc. 29-11),

Plaintiff's Responses to Defendant's First Set of Interrogatories (Doc. 29-12),[7] and deposition testimony in which Plaintiff stated she had been chased by "skinheads" in an effort to convince her coworkers to stop talking about race (Doc. 39-1, 146:14–148:4).

The evidence before the Court is insufficient to sustain Plaintiff's hostile environment claim. Many of the events Plaintiff complains of—such as Plaintiff's leadership program rejection, Plaintiff's email complaints regarding workplace conflicts, and the bulk of her confrontations with Ms. Tagliarino—were not "*based* on a protected category" and thus add no support to her hostile work environment claim. *See Trask*, 822 F.3d at 1195. Setting aside nondiscriminatory workplace turmoil, Plaintiff's work environment was not sufficiently severe or abusive to sustain her claim. *See Bryant v. Jones*, 575 F.3d at 1297. This is true even if the Court considers the Complainant Affidavit. The incidents recounted do not show that Plaintiff's work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive environment,'" in violation of Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21

---

[7] In this document, Plaintiff asserts that some of her colleagues were "upset by how [Ms. Tagliarino] treated [her]," and recounts two instances where she was "yelled at" by supervisors. (*Id.* at p. 7). Plaintiff also avers that she was accused of stealing office supplies, and Ms. Tagliarino "was constantly yelling and berating" her, and once threw reports in her direction that landed on Plaintiff's desk. (*Id.* at p. 8). Plaintiff also responded to a question regarding coworkers speaking negatively about African Americans, stating that Joshua Hart (1) spoke openly about his dislike for EEOC requirements, (2) wrote a letter to "USDA leaders because he received a general email containing information related to African American people," and (3) caused a "huge ruckus . . . [because of] an email celebrating American Indian Day rather than Christopher Columbus Day." (*Id.* at p. 9). Plaintiff further maintains that Joshua Hart bragged that his grandfather was a member of the Ku Klux Klan. (*Id.* at p. 10).

(1993). Defendant is therefore entitled to summary judgment on Plaintiff's hostile work environment claim.[8]

## B. Failure-to-Promote Claim

Defendant also moves for summary judgment on Plaintiff's failure-to-promote claim.

To prevail on a failure-to-promote claim,[9] a plaintiff must establish that: (1) she belongs to a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected; and (4) other employees outside the protected class were promoted. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004); *see also Walker v. Mortham*, 158 F.3d 1177, 1186–91 (11th Cir. 1998). Discrimination claims based on circumstantial evidence, such as Plaintiff's, are generally assessed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this framework, the plaintiff first has the burden of establishing a prima facie case of

---

[8] One more issue bears passing mention here. Plaintiff has not shown that Defendant is responsible for the vast majority of the alleged abuse, as required for a successful hostile environment claim. *See Miller*, 277 F.3d at 1275. Many of the episodes in question involved colleagues rather than superiors; Plaintiff did not report many of the issues to Defendant; and when she did report, Defendant took prompt action. These circumstances buttress the Court's conclusion that Plaintiff has failed to come forward with evidence to support a reasonable finding that Plaintiff was exposed to a hostile work environment.

[9] Plaintiff titles this claim as a non-selection claim in the June Complaint, but the Court construes it as a failure-to-promote claim. This minor correction does not affect the outcome, however. "In general, to establish a prima facie case of refusal to hire, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for and applied for a job for which the employer was seeking applicants; (3) she was rejected in spite of her qualifications; and (4) after her rejection, the position remained open or was filled by a person outside of [her] protected class." *Enwonwu v. Fulton-Deklb Hosp. Auth.*, 286 F. App'x 586, 601 (11th Cir. 2008) (per curiam).

discrimination, which creates a rebuttable presumption that the employer acted illegally." *Wilson*, 376 F.3d at 1087.

Where the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* "This burden is 'exceedingly light'; the defendant must merely proffer non-[discriminatory] based reasons, not prove them." *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). Defendant's burden here "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

If the employer carries this burden, "the burden of production shifts [back] to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Wilson*, 376 F.3d at 1087. "To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (quotations omitted).[10] If the given reason might motivate a reasonable employer, "a plaintiff cannot recast the reason but

---

[10] "[W]here an employee seeks to prove pretext through qualifications alone, the difference in qualifications must be so glaring that no reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005) (citing *Alexander v. Fulton Cty.*, 207 F.3d 1303, 1340 (11th Cir. 2000)). "However, where the qualifications disparity is not the sole basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext." *Vessels*, 408 F.3d at 772 (citing *Bass v. Bd. of Cty. Comm'rs.*, 256 F.3d 1095, 1107 (11th Cir. 2001) ("Hiring a less qualified person can support an inference of discriminatory motivation.")).

must meet it head on and rebut it." *Wilson*, 376 F.3d at 1088. An employer may choose not to hire or promote an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1187 (11th Cir. 1984). "Title VII is not a shield against harsh treatment at the workplace." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981).[11]

Plaintiff's failure-to-promote claim cannot survive because Plaintiff has not shown pretext. In reaching this conclusion, the Court first assumes without deciding that Plaintiff proved a *prima facie* failure-to-promote claim, shifting the burden to Defendant to show legitimate, nondiscriminatory reasons for its actions. Defendant easily carried this "exceedingly light burden" by submitting affidavits from employees, along with supporting documentation, showing that Plaintiff was less qualified and less experienced than the selectees. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003); (Doc. 29-16, ¶¶ 9–10, p. 8; Doc. 29-17, ¶ 12); *see also Meeks*, 15 F.3d at 1019; *Reeves*, 530 U.S. at 142.

Next, the burden shifts to Plaintiff to establish that Defendant's proffered reasons are pretextual. *See Wilson*, 376 F.3d at 1087. Plaintiff did not carry her burden as to pretext, dooming this claim. In the June Complaint and the briefing, Plaintiff only compares herself to one of the selectees, Nube McDermott. (June Comp. ¶ 17; Doc. 32, pp. 13–14). Plaintiff notes her own biology degree, experience working for "PETO Seeds,"

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

14

internship at the University of Wisconsin, and that Ms. "McDermott did not have a college degree." (June Comp. ¶ 17; Doc. 32, pp. 13–14). Defendant counters that Ms. McDermott had eight years more experience than Plaintiff as a PPQ Technician, and much of Plaintiff's experience is irrelevant to the position, such as the time she spent working as a teacher, chaplain, and mortgage broker. (Doc. 29, p. 21; Doc. 29-15, pp. 42–47; Doc. 37, pp. 7–8). Taken together, Plaintiff has not shown sufficient faults with Defendant's "proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *See Cooper*, 390 F.3d 725. At best, Plaintiff has only (1) shown that Plaintiff and Ms. McDermott are similarly qualified and (2) advanced largely unsupported attacks on Defendant's decision process.[12] Plaintiff likewise did not submit evidence showing that Defendant's failure to select her for the 319 Position was discriminatory and that Plaintiff's proffered rationale (selectees were better qualified) was pretextual. Because Plaintiff has not shown evidence of pretext, her failure-to-promote claim cannot survive summary judgment.

### C. Retaliation Claim

Defendant finally moves for summary judgment on Plaintiff's retaliation claim.

---

[12] Plaintiff argues that Defendant's matrix is not adequately linked to the 361 Position's job duties. (Doc. 32, p. 12). Plaintiff also described the matrix as a "subjective matrix" that may or may not have been "manipulated to select individuals who lack the objective skill set to qualify for a position." (*Id.* at p. 14). These unsupported contentions fall short of satisfying Plaintiff's burden to "meet [Defendant's proffered rationale] head on and rebut it." *See Wilson*, 376 F.3d at 1088.

The few cases cited in this section of Plaintiff's brief do not advance her case. *See, e.g., Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975); *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973); *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971).

Retaliation claims based on circumstantial evidence are likewise reviewed under the *McDonnell Douglas* framework. First, a plaintiff must establish a *prima facie* retaliation case by showing: (1) she participated in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link between the protected activity and adverse action. *Bryant*, 575 F.3d at 1307–08. Plaintiff alleges that Defendant retaliated against her by rating Plaintiff lower than other employees resulting in her non-selection for the 319 and 361 Positions. (June Comp. ¶¶ 26–31).

Like the failure-to-promote claim, Plaintiff's retaliation claim fails at the pretext stage. Because Plaintiff advances the same pretext argument in support of her retaliation claim, the failure-to-promote claim's pretext analysis above applies with equal force here. Plaintiff did not produce even circumstantial evidence that Defendant's proffered reasons for not promoting Plaintiff were pretextual.[13] Therefore, Defendant is entitled summary judgment on Plaintiff's retaliation claim.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED**.
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant, U.S. DEPARTMENT OF AGRICULTURE, and against Plaintiff, Thelma Belton, as to:

---

[13] Nor did Plaintiff present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).

a. The June Complaint, No. 6:17-cv-989-Orl40-TBS, Doc. 1 (M.D. Fla. June 1, 2017); and

   b. The November Complaint, No. 6:17-cv-1906-Orl40-TBS, Doc. 1 (M.D. Fla. Nov. 6, 2017).

3. The Final Pretrial Conference, scheduled for March 13, 2019, is **CANCELLED**.

4. Thereafter, the Clerk is **DIRECTED** to terminate any pending deadlines and close the file.

**DONE AND ORDERED** in Orlando, Florida on March 12, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties